1  KENDALL BRILL & KELLY LLP
   Jeffrey H. Rutherford (181695)
2    *jrutherford@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
3  Los Angeles, California 90067
   Telephone: 310.556.2700
4  Facsimile:  310.556.2705

5  Attorneys for
   Defendant Thomas H. Peters
6

7

8

9                  UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                       WESTERN DIVISION

12

13  UNITED STATES OF AMERICA,         Case No. CR 22-09-SB

14            Plaintiff,              **DEFENDANT THOMAS H.
                                      PETERS' SENTENCING
15       v.                           MEMORANDUM**

16  THOMAS H. PETERS,                 Date:       May 9, 2023
                                      Time:       8:00 a.m.
17            Defendant.              Courtroom:  6C

18                                    **REDACTED VERSION**

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................. 1

II.   PROCEDURAL BACKGROUND ........................................ 3

   A.   The Cooperation Plea Agreement ................................. 3

   B.   The PSR and the USPO's Recommendation Letter ........ 3

   C.   Substantial Assistance and the Government's Anticipated Motion for a Downward Departure Pursuant to §5K1.1 ................ 4

III.   MR. PETERS' BACKGROUND ........................................ 4

   A.   Overview ................................................................... 4

   B.   Personal, Family and Educational Background .............. 6

   C.   Employment Background ............................................ 6

IV.   SENTENCING ............................................................... 7

   A.   Nature and Circumstances of the Offense .................... 8

      1.   Aiding and Abetting Extortion Atypical and Outside the Heartland ..................................................... 8

      2.   Context of the Collusive Lawsuit and Settlement ....... 10

      3.   Overstated Impact of Amount Obtained by Person A ... 11

      4.   Abuse of Trust ...................................................... 12

   B.   History and Characteristics of Mr. Peters .................... 13

      1.   Mr. Peters' Conduct is a Marked Deviation from an Otherwise Law-Abiding Life ..................................... 13

      2.   Mr. Peters' Employment Record ............................. 14

      3.   Mr. Peters' Extraordinary Acceptance of Responsibility ...... 15

      4.   The Collateral Consequences to Mr. Peters and his Family Are Significant .............................................. 15

         (a)   Loss of Law License ...................................... 15

         (b)   Notoriety of Case and Civil Lawsuits ............... 16

         ■   ████████████████████████████████

      5.   History of Good Works and Community Service ......... 17

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

6.    Amenability to Supervision in the Community .......................... 17

C.    Purposes of Sentencing ............................................................ 18

D.    Need to Avoid Unwanted Disparities ...................................... 18

E.    Fine .......................................................................................... 19

F.    Proposed Conditions of Supervised Release/Probation ........... 19

V.    CONCLUSION .................................................................................. 20

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States v. Anderson*,
    533 F.3d 623 (8th Cir. 2008) ............................................................................. 16

*United States v. Autery*,
    555 F.3d 864 (9th Cir. 2009) ............................................................................. 13

*United States v. Brown*,
    985 F.2d 478 (9th Cir. 1993) ............................................................................. 15

*United States v. Corry*,
    206 F.3d 748 (7th Cir. 2000) ............................................................................. 11

*Gall v. United States*,
    552 U.S. 38 (2007) .............................................................................................. 8

*United States v. Gupta*,
    904 F.Supp.2d 349 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir.
    2014) .................................................................................................................. 14

*United States v. Hendrick*,
    2009 WL 10709763 (S.D. Fla. Sept. 23, 2009) ................................................ 16

*United States v. Jones*,
    158 F.3d 492 (10th Cir. 1998) ...................................................................*passim*

*Kimbrough v. United States*,
    552 U.S. 85 (2007) .............................................................................................. 7

*United States v. Lam*,
    20 F.3d 999 (9th Cir. 1994) ............................................................................... 13

*Nelson v. United States*,
    555 U.S. 350 (2009) (*per curiam*) ..................................................................... 8

*United States v. Panaro*,
    266 F.3d 939 (9th Cir. 2001) .............................................................................. 9

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 22-09-SB

DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

*United States v. Patillo*,
  817 F.Supp. 839 (C.D. Cal. 1993) .......................................................... 14

*United States v. Whitmore*,
  35 F. App'x 307 (9th Cir. 2002) ............................................................ 16

**Statutes**

18 U.S.C. § 3553 ............................................................................ 7, 8, 18

Cal. Bus. & Prof. Code § 17200 ............................................................ 14

Cal. Gov't Code § 12940 ...................................................................... 8

U.S.S.G. §2B1.1, App. Note 21(C) ........................................................ 11

U.S.S.G. §5C1.1, App. Note 7 .............................................................. 17

U.S.S.G. §5H1.4 ................................................................................. 17

U.S.S.G. § 5H1.5 ................................................................................ 14

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

I. **INTRODUCTION**

Over three and a half years ago, Thomas Peters made the important decision to accept responsibility for his own misconduct and to reveal the misconduct of others in connection with litigation in the Los Angeles County Superior Court concerning a botched customer care and billing system purchased by the Los Angeles Department of Water and Power ("LADWP") from PricewaterhouseCoopers ("PwC").[1]  Since then, he has worked to redeem himself by cooperating in the wide-ranging federal criminal investigation by the United States Attorney's Office █████████████████████████████

██████████████████████████████████████████

██████████████████

███████████████████████████████████

███████████████████████████████

███████████████████████████

████████████████████████████████

██████████████████████████████████████

█████████████████████████████

████████████████████████████████

████████████

Mr. Peters' willingness to accept responsibility and cooperate stands in stark contrast to many other individuals involved in the underlying litigation who engaged in serious misconduct – including acts of collusion and concealment – and who acted for personal financial gain, lied in meetings with the government, or simply refused to accept responsibility for their roles in the underlying litigation and the concealment of wrongdoing.

During the last three and a half years, Mr. Peters has been placed on

---

[1] Mr. Peters' letter to the Court is attached as Ex. A.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

involuntary inactive status by the State Bar, and thus unable to work at his chosen profession or teach (he will be summarily disbarred when the Court enters final judgment), has been sued civilly, and has been vilified in the media.  He has suffered emotionally.  His family, particularly his wife and pre-teen daughter, have struggled, as well, for which Mr. Peters has tremendous remorse since he knows his misconduct has caused their anguish.  Through this, Mr. Peters has not wavered from his commitment to accept responsibility and cooperate with the investigations.

Mr. Peters' downfall is that much more sad, given that his misconduct is entirely out of character.  As the many letters of support attest, aside from the events herein Mr. Peters has led an exemplary life, professionally and personally.[2]  He had a long, unblemished record of practicing law, at the highest levels, with no history of professional discipline.  He is a devoted husband and father, and a committed friend and family member.  It can truly be said that the events underlying this case are an aberration from an otherwise law-abiding life.

The nature and circumstances of the offense to which Mr. Peters pled guilty – aiding and abetting the extortion of Paul Kiesel by Kiesel's recently-fired secretary, Person A – are serious, but highly unusual.  Person A, the extortionist, was not charged.  Mr. Peters had no contact, directly or indirectly, with Person A or any confederate or lawyer for Person A.  Mr. Peters played no role in determining the amount demanded or obtained by Person A, and asked for and received no payment.

The defense respectfully requests the Court impose a non-custodial sentence of probation, with home confinement, substantial community service, and low-end fine, based on a combination of the following:

---

[2] *See* Letters of Support at Ex. B.  Mr. Peters' letters of support, which span a wide array of friends, family, and former colleagues, underscore key aspects of Mr. Peters' personal history and characteristics. The letters speak to his true character and demonstrate that he has not only accepted responsibility for his wrongdoing, but that his wrongdoing was a complete aberration and out of character.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2                                                      Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

- The government's anticipated motion for a downward departure, pursuant to §5K1.1;

- The factors set forth in 18 U.S.C. § 3553(a);

- A downward departure, pursuant to §2B1.1, App. Note 21(C), due to the overstated impact of the amount obtained by Person A, as noted in the PSR at ¶ 149;

- Rejection of an enhancement for abuse of a position of trust, pursuant to §3B1.1; and

- A downward *Booker* variance, reflecting Mr. Peters' community work, history and characteristics, imminent and certain disbarment, and minimal likelihood of recidivism, as noted in the PSR at ¶ 150.

For the reasons herein, such a sentence "is sufficient, but not greater than necessary," to achieve the purposes of sentencing.

## II.     PROCEDURAL BACKGROUND

### A.     The Cooperation Plea Agreement

Mr. Peters pled guilty to a single one-count information charging aiding and abetting an extortion, in violation of 18 U.S.C. §§ 2, 1951, pursuant to a cooperation and plea agreement. The plea agreement contemplates Mr. Peters' cooperation with the government and, as directed by the government, with any other appropriate authority, including the Bar of any state.  *See* Plea Agreement at ¶ 3.[3]

### B.     The PSR and the USPO's Recommendation Letter

The Presentence Report ("PSR") and the USPO's Recommendation Letter are addressed in the separately filed Objections and Corrections to Presentence Report and USPO Recommendation Letter.

---

[3] The plea agreement also contains a commitment by the government to recommend a sentence at the *low end* of the Guidelines after application of a downward departure for cooperation, under §5K1.1.  *See* Plea Agreement at ¶ 6.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1
2
**C.**   **Substantial Assistance and the Government's Anticipated Motion for a Downward Departure Pursuant to §5K1.1**

3   The defense anticipates the government will move this Court for a downward

4   departure, pursuant to §5K1.1, to account for Mr. Peters' substantial assistance to

5   the government's federal criminal investigation ████████████████████

6   ████████████████████████████████████████████████████

7   ████████████████████████████████████   As such, the

8   defense will address specifics of Mr. Peters' cooperation and any motion for a

9   downward departure, in its reply sentencing memorandum after the government files

10   its motion and details Mr. Peters' cooperation.

11   **III.**   **MR. PETERS' BACKGROUND**

12   **A.**   **Overview**

13   Mr. Peters is 57 years old.  He is a man of good character who, for decades,

14   dedicated himself tirelessly to the practice of the law.  Before he made the poor

15   decisions that brought him into this matter, Mr. Peters had reached the heights of his

16   profession and was recognized by his peers as a talented professional who

17   maintained a deep respect for justice and integrity in the law.

18   He also has a wide circle of supportive friends and family who describe him

19   as a person of high character, loyalty, and compassion, and also as a committed

20   father, husband, son, and brother.  Their detailed, insightful, and thoughtful letters

21   speak to Mr. Peters' many good qualities.  *See* Letters of Support at Ex. B.  After a

22   lifetime of honest, honorable behavior and solid standing in the community, Mr.

23   Peters knows his situation has severely impacted his family and is ashamed by how

24   his failings have affected them, particularly his ██████ daughter.  Family

25   members and friends remark on Mr. Peters' profound disappointment in himself and

26   sorrow for putting his family through this ordeal.  They uniformly regard his

27   conduct as wholly aberrant from how Mr. Peters has comported himself throughout

28   life.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

4

Case No. CR 22-09-SB

DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

Mr. Peters' sister Elizabeth writes in her letter:

> The last several years have been emotionally devastating for Thom and our family. I would never have imagined Thom in a situation like this, and I'm certain that he never did either. We were raised to be honest, generous, and kind. Thom has always been those things. Thom donates to charities that he supports, he advocates for underdogs, and he admits his faults and mistakes.

Brother Ben Peters writes:

> I can tell you with sincerity that Thom is gutted by what he has done, he is disappointed in himself and he knows he has let us all down with his actions.  Thom and I have spent many nights discussing this and I know he is deeply ashamed and knows he has to pay back the society he has wronged.

David Egdes, Senior Vice President at Tennis Channel, has known Mr. Peters since college.  He writes:

> Thom always loved the law. He is the most well-intentioned person and he always cared about his clients.  It's just sad what this has done to him. We still meet for lunch and I've been through the whole thing with him.
>
> His whole life was about work and family.

Greg Satz, a neighbor, states:

> Since this has happened, I can truthfully say Thom is devastated and incredibly remorseful for what he has done.  He has told me over and over that he is dumbfounded by what he did…. I would hazard to guess this was a total lapse in judgement for him, completely out of character.

Mr. Peters feels deep contrition for his poor judgment and accepts complete responsibility for his actions.  His remorse is real and permanent.  While he has made a serious mistake, he is not, nor has he ever been, dangerous or a threat to society.  On the contrary, he is a decent, hardworking, family man with an excellent work history, a capacity to contribute in the future, who could not have imagined the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

consequences he now faces but who also poses zero risk of reoffending.

**B.    Personal, Family and Educational Background**

The PSR sets forth Mr. Peters' personal, family, and educational background, and will not be repeated here. *See* PSR Part C.

**C.    Employment Background**

Mr. Peters' employment background is set forth in the PSR.  *See* PSR Part C, ¶¶ 121-26.  The defense has also attached a copy of Mr. Peters' *curriculum vitae*. *See* CV at Ex. C.  A few points about Mr. Peters' employment background bear highlighting.

Mr. Peters practiced law from 1992 until he left the Los Angeles City Attorney's Office in 2019.  He has no history of attorney discipline and was never the subject of a State Bar complaint, to his knowledge.

Mr. Peters' choice to specialize in civil law was influenced by an experience he had as a teenager.  His father testified as an expert witness in a civil case and arranged for Mr. Peters to meet with the attorneys on the case.  Mr. Peters recalls hearing them saying that in civil law you always learn something new, which deeply resonated with Mr. Peters.

Mr. Peters' love of the law also drew him to teaching it, and he spent two years as an adjunct faculty member at the UCLA School of Law.  As Dean Russell Korobkin of the UCLA School of Law writes:

> In 2017, in my role as vice dean in charge of the law school curriculum, I was looking to find an adjunct faculty member to teach a seminar for law students who were participating in civil law internships with government agencies.  I thought that Mr. Peters would be ideal for this, so I reached out to him.  Despite his very busy schedule, he enthusiastically embraced the idea, and taught the seminar very successfully for four consecutive semesters, before his current legal troubles forced him to step away from teaching.  He relished the idea of helping law students think deeply and analytically about the work that they were doing and to develop as public servants.  As with all my

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

6                                    Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

> interactions with Mr. Peters, I found his actions to be entirely selfless. Traveling from the City Attorney's Office downtown to Westwood to teach an evening seminar after a full day of work is taxing, and the monetary compensation involved is minimal. The only reason for a lawyer of Mr. Peters' stature to take on this responsibility – and the verve with which he approached the task – is a desire to give back to the legal community. It was definitely a loss to our program when he had to stop teaching the course.

Mr. Peters' mother writes:

> He wanted to be an attorney since he was a young child and worked very hard to be the best he could for his clients. He also greatly enjoyed doing some part-time teaching to law students at UCLA. He was honored to be chosen to work in the City Attorney's office.

> His father and I have always been proud of Thom's work ethic and I know he worked long and hard to succeed in each position. At Thom's 50th birthday party, in April 2016, it was such an honor to have Thom's boss, the city attorney, come to his party and joke with us, "Thom is an outstanding lawyer, he's too good to be true. I came to this party just to meet his parents, and get the inside story."

Mr. Peters has been devastated by losing, almost overnight, the career that has long defined him. The downfall has been rapid and steep, and he has only recently begun to put himself back together.

## IV.   SENTENCING

A court should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a); *see Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (describing this language as the statute's "overarching provision"). With that in mind, a court considers the factors set forth in 18 U.S.C. § 3553(a)(1-7).[4]

---

[4] The advisory Guidelines and their policy statements are among these

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

A.      **Nature and Circumstances of the Offense**

          1.      **Aiding and Abetting Extortion Atypical and Outside the Heartland**

Mr. Peters' charged conduct, while serious, is outside the heartland of extortion cases the defense has surveyed.[5]

*First*, the central actor in the extortion is Person A. She deliberately stole documents (which belonged to the City as the client of the firm) from Kiesel Law (the law firm of Mr. Kiesel, then co-Special Counsel with Mr. Paradis for the City) in anticipation of being terminated by Mr. Kiesel and with the intent to leverage the stolen documents to settle an employment claim against the firm.[6] Mr. Peters understood the stolen documents to include attorney-client privileged communications and attorney work product that were the subject of an ongoing discovery dispute in the *PwC* litigation.

*Second*, Mr. Peters was not aware of Person A's theft or threats until her extortion and discussions of settlement with Mr. Kiesel were well underway, when

sentencing factors. *See* 18 U.S.C. § 3553(a)(4)-(5). The Guidelines are the "starting point and the initial benchmark" of the sentencing process. *Gall v. United States*, 552 U.S. 38, 49 (2007). While a court is required to take account of the Guidelines, it may not presume that the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (*per curiam*).

[5] This is an atypical aiding and abetting extortion case. The extortion is not part of a broader RICO case. Rather, it is part of a case involving lawyers who colluded in a class action lawsuit and settlement and took steps to conceal that collusion. The extortion alleged here – to prevent disclosure of stolen and privileged documents – was limited in duration and severity. There was no threat of force or violence. The potential harm was financial and reputational and did not involve the potential disclosure of sexual or intimate material. There is no connection to organized crime. The target of the extortion, Mr. Kiesel, is not a vulnerable victim.

[6] Person A had an apparently valuable employment/wrongful termination claim against Kiesel Law under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, *et seq.*, due to her age, race, gender, and medical condition.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

he was informed of it by Mr. Paradis, who sought Mr. Peters' assistance.

*Third*, Mr. Peters never coordinated with, communicated with, or acted in concert with Person A, nor did he participate in any of the meetings between Mr. Kiesel and Person A to resolve their dispute.

*Fourth*, Mr. Peters did not demand that Mr. Kiesel pay any particular sum of money to Person A or any sum at all; only that Mr. Kiesel do whatever needed to be done to retrieve the stolen City documents. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████[7] ██

████████████████████████████████████████████████

████████████████ Also unbeknownst to Mr. Peters, Mr. Paradis (and/or Jack Landskroner through Mr. Paradis) paid $400,000 of the $800,000 obtained by Person A.[8]

*Fifth,* Mr. Peters did not demand, expect, or receive any money. The payment was demanded by and paid to Person A. Extortion cases involving payments to third parties are, by far, the exception. And, while an individual can be liable for aiding and abetting an extortion where the funds extorted are directed to a third party rather than the person making the extortionate threat, *see United States v. Panaro*, 266 F.3d 939, 943 (9th Cir. 2001), those cases typically involve payments to third parties wherein the aider and abettor is conspiring with or acting "in concert" with the third party. Such is *not* the case here. These circumstances were highly unusual, particularly where the third-party extortionist had a potentially valuable cause of

---

[7] ██████████████████████████████████████
████████████████████████████████████████

[8] Attached is the settlement check of $800,000 and wire transfers totaling $400,000 from Mr. Paradis to Mr. Kiesel. *See* Payment Documents at Ex. H.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    action, unrelated to the aider and abettor, that was released as part of the extortion.

2    *Sixth*, the extortionist, Person A, has not been charged. Also not charged are

3 the "senior members of the City Attorney's Office" who "directed [Mr. Peters] to

4 take care of the situation." *See* Peters Factual Basis at ¶ 20.

5    *Last*, Mr. Peters did not know that Mr. Paradis' motivation to conceal the

6 origins of the *Jones* class action complaint and its collusive settlement was because

7 Mr. Paradis engaged in an elaborate kickback and bribery scheme to enrich himself

8 and others. Mr. Peters only learned of these illegal financial arrangements after the

9 plea agreements for Mssrs. Paradis, Wright and Alexander became public.

### 2.    Context of the Collusive Lawsuit and Settlement

11    The backdrop to Person A's extortion, and Mr. Peters' acts of concealment, is

12 the collusive lawsuit and settlement of the *Jones* class action and related class

13 actions.[9] Mr. Peters had a limited role in defending and settling the class actions,

14 including *Jones,* which was the subject of the stolen documents.

15    While Mr. Peters learned early on of much of the misconduct of others, and

16 thereafter personally engaged in misconduct, including by failing to whistle blow

17 and affirmatively acting to conceal the origins of the *Jones* class action and

18 collusive settlement, his role was limited. Mr. Peters was not the architect of the

19 "white knight" strategy, which was devised by Mr. Paradis and authorized and

20 directed by City Attorney Official. *See* Peters Factual Basis at ¶ 8(a). He was not a

21 central player on the class action defense team and, after the filing of the *Jones* class

22 action complaint, did not negotiate the settlement of the class actions or the award of

23 collusive attorney's fees, did not appear in court for the hearings surrounding

---

24      [9] Mr. Peters' acts of concealment took place in connection with the City's

25 affirmative lawsuit against PWC, which Mr. Peters was supervising because Mr.

26 Clark (who normally oversaw the defense of class actions against LADWP,
including *Jones*) was recused from the *PWC* litigation due to his status as a retired

27 partner of PWC's counsel, Gibson, Dunn & Crutcher, LLP. *See* Organization

28 Charts at Ex. D.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

10

Case No. CR 22-09-SB

DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

settlement terms and attorneys' fees, all of which were handled by other members of the City Attorney's Office and outside counsel, and did not participate substantively in the multiple mediation sessions before former District Court Judge Dickran Tevrizian (Mr. Peters only briefly stopped by one of them as a courtesy and engaged in no substantive negotiation).  Those negotiations were headed by Mr. Clark, with Mr. Paradis' active assistance.

Aside from Mr. Paradis, none of the attorneys who were the central participants in the collusive *Jones* lawsuit have been charged criminally.  No charges have been brought against the attorneys who handled the mediation and settlement of *Jones*, or who handled multiple court appearances in which the collusive origins and settlement of the lawsuit were not disclosed or were actively concealed.

Also, as the Court may know, discovery of the collusion in *Jones* and concealment in *PwC* prompted, among other things, appointment of new class counsel, Brian Kabateck and Kabateck LLP, to investigate the class action settlement and report on any issues that could inure to the detriment of the class. Judge Elihu Berle approved a stipulation that concluded that, aside from the collusive award of attorneys' fees and in consideration of the resolution of certain open issues, the original *Jones* settlement was "fair, reasonable, and adequate relief…and is in the best interests of the class members."[10]

### 3.     Overstated Impact of Amount Obtained by Person A

Person A was paid $800,000.  That amount overstates the Guidelines range *with respect to Mr. Peters' Guidelines exposure* and, as such, overstates the seriousness of his offense with respect to his Guidelines calculation.  *See* U.S.S.G.

---

[10] In support of this point, the defense attaches a pleading, without its exhibits, from *Bradshaw v. City of Los Angeles*, Case No. CV 19-6661-VAP, which describes the stipulation and approval by Judge Berle.  *See Bradshaw* Pleading at Ex. E (Case No. CV 19-6661-VAP, Dkt. No. 200 (without exhibits), filed Feb. 13, 2023).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

11                                    Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

1   §2B1.1, App. Note 21(C).[11]

2       In such situations, a Guidelines downward departure (under App. Note 21(C))

3   or downward *Booker* variance is encouraged.  *Id.*; *see, e.g., United States v. Corry*,

4   206 F.3d 748, 751 (7th Cir. 2000) ("That the loss overstates the seriousness of the

5   offense is … an encouraged basis for departure.").  This is a departure ground that is

6   specifically noted in the PSR, (PSR ¶ 149), although the USPO's Recommendation

7   Letter does not recommend it.

8       As noted above, Mr. Peters never asked for nor received any money, played

9   no role in determining the amount obtained, and did not care whether or how much

10  Person A was paid, so long as the stolen documents were returned.  He only knew

11  that Person A had demanded $900,000 to settle her claims and return the documents,

12  and Mr. Kiesel had offered $60,000 prior to their final meeting.  Had the amount

13  Person A ultimately obtained been, for instance, less than $95,000, it would have

14  resulted in an enhancement of eight (8) levels, resulting in a range of 15-21 months

15  (Offense Level 14), after acceptance of responsibility, rather than an enhancement

16  of fourteen (14) levels, and a range of 33-41 months (Offense Level 20).

17              **4.    <u>Abuse of Trust</u>**

18      The PSR applied a two-level enhancement for abuse of a position of trust,

19  pursuant to §3B1.3, on the ground that Mr. Peters' position at the City Attorney's

20  Office "significantly facilitated" his aiding and abetting of Person A's extortion.

21  *See* PSR ¶¶ 57-58.  This was not an enhancement to which the parties stipulated in

22  the plea agreement and should not be applied here.

23      Mr. Peters' role was limited to threatening Mr. Kiesel that Mr. Peters would

24  advocate to his superiors that Mr. Kiesel be fired as Special Counsel should Person

25  A follow through and disclose the stolen documents.  While Mr. Peters may have

26  ─────────────────

27  [11] The amount obtained, for the purpose of calculating the Guidelines, is
    determined by cross-referencing §2B1.1(b)(1), and is the amount obtained by the
28  extortionist, Person A.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

12                                    Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

had the ability to influence a decision to terminate Mr. Kiesel, he did not have the authority to do so.  As such, this threat of advocacy cannot fairly be characterized as something that "significantly facilitated" Person A's extortion, which was already well underway and, indeed, was in settlement discussions when Mr. Peters was informed of the matter by Mr. Paradis.

Mr. Peters' position and role did not affect Person A's conduct or behavior and there is no evidence she had any idea of Mr. Peters' role.  She devised her scheme to steal the documents and threaten to disclose them unless she was paid for an allegedly wrongful termination. *Her actions were completely independent of Mr. Peters.*

Finally, Mr. Peters' participation was not necessary to Person A's commission of the crime, particularly given the participation of Mr. Paradis.[12]  Mr. Paradis, as Mr. Peters only later learned, was intent on keeping the collusive origins of *Jones* from being disclosed because he had many millions of dollars in kickbacks and improper contracts at stake.  Unlike Mr. Paradis, Mr. Peters had no interactions with Person A during this time period.  He played no role in the negotiations between Mr. Kiesel and Person A. He had no role in the amounts demanded or paid, nor did he care what the amount was, if anything.

**B.    History and Characteristics of Mr. Peters**

**1.    Mr. Peters' Conduct is a Marked Deviation from an Otherwise Law-Abiding Life**

As the letters of support underscore, Mr. Peters' conduct in this case was a clear aberration and, thus, fits within the departure for aberrant behavior under §5K2.20, since the conduct was a "single act" of "limited duration" and a "marked

---

[12] Mr. Kiesel's $60,000 initial offer to settle the employment dispute with Person A was deemed insufficient.  Unbeknownst to Mr. Peters until much later, Mr. Paradis contributed $400,000 to reach the $800,000 ultimately paid.  As noted above, the defense does not know if the $400,000 originated from Mr. Landskroner.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

13                                    Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

1  deviation" from an "otherwise law-abiding life."  And, even if Mr. Peters' conduct

2  does not fit neatly within the aberrant behavior departure, it merits consideration in

3  terms of supporting a substantial downward variance and a non-custodial sentence.[13]

4      Mr. Peters is in Criminal History Category I.  When a defendant is in

5  Category I, a court may consider the lack of a criminal history "as a mitigating

6  factor" in support of a downward variance.[14]

7      The defense submits Mr. Peters' "personal history and characteristics starkly

8  contrast with the nature and circumstances of" this crime, and thus should be

9  considered as a factor that supports a downward *Booker* variance.[15]

### 2.   Mr. Peters' Employment Record

11      Mr. Peters has been a lawyer and member of the State Bar of California, in

12  good standing, since 1993.  He had steady employment in both the public and

13  private sectors, holding a significant leadership position at the City Attorney's

14  Office, as well as partnerships in well-regarded civil litigation firms.  Aside from the

15  misconduct underlying his conviction, his legal career was exemplary.[16]

16      By 2013, Mr. Peters decided it was time to serve his community by going into

17  public practice. Although enjoying a successful private practice, he was honored to

---

[13] *Cf. United States v. Lam*, 20 F.3d 999, 1003-05 (9th Cir. 1994) (holding that a downward departure was warranted even though the defendant's behavior was not technically an aberration because he had a previous offense).

[14] *See United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (supporting this variance factor and noting that defendants with minor criminal histories can also be in Criminal History Category I).

[15] *See United States v. Gupta*, 904 F.Supp.2d 349, 353-54 (S.D.N.Y. 2012) (a variance for "aberrant behavior" need not fit within the definition in the Guidelines), *aff'd*, 747 F.3d 111 (2d Cir. 2014).

[16] A court can take account of that employment history in determining an appropriate sentence.  *See* U.S.S.G. § 5H1.5; *see also United States v. Patillo*, 817 F.Supp. 839, 845 (C.D. Cal. 1993) (holding the defendant's stable employment was a justification for a departure); *see also United States v. Jones*, 158 F.3d 492, 498 (10th Cir. 1998).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

14      Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

1  be selected by City Attorney Michael Feuer to serve as Chief of the Civil Litigation

2  Branch.  That position entailed, among many other things, oversight of more

3  than100 lawyers handling a range of civil claims involving the City; everything

4  from sidewalk trips and falls, defense of alleged sexual abuse, wrongful death,

5  wrongful incarceration, police use of force and wrongful termination matters,

6  Constitutional challenges to City executive and legislative actions, appellate

7  advocacy, as well as affirmative litigation brought by the City Attorney's Office

8  pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*

9       Finally, he was active in professional associations, serving on the boards of

10  the Los Angeles County Bar Association and Consumer Attorneys Association of

11  Los Angeles. He was a Lecturer at UCLA Law School.  An AV-rated and highly

12  respected lawyer, he regularly spoke to bar groups.

13              **3.    Mr. Peters' Extraordinary Acceptance of Responsibility**

14       Mr. Peters' acceptance of responsibility has been greater than that of a typical

15  defendant, who earns a 3-level reduction under §3E1.1 simply by timely admitting

16  conduct and sparing the government from preparing for trial.  *See*, *e.g.*, *United*

17  *States v. Brown*, 985 F.2d 478, 482-83 (9th Cir. 1993) (holding district court did not

18  err in making additional reduction beyond that provided by §3E1.1).  His

19  extraordinary acceptance of responsibility merits consideration in support of a

20  downward *Booker* variance and non-custodial sentence.

21              **4.    The Collateral Consequences to Mr. Peters and his Family**

22                      **Are Significant**

23       Over the last three and a half years, Mr. Peters has suffered significant and, in

24  some cases, irreversible employment/financial, reputational, and personal

25  consequences.  These collateral consequences merit consideration in support of a

26  substantial downward *Booker* variance.

27              **(a)    Loss of Law License**

28       Mr. Peters has been involuntarily suspended from practicing law and will be

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

15                                                   Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

summarily disbarred when final judgment is entered in this case.

The loss of a license to practice law and earn a livelihood – after nearly 30 years of unblemished work – is life changing and a significant punishment, in itself, for wrongdoing.[17]  *See United States v. Whitmore*, 35 F. App'x 307, 322 (9th Cir. 2002) (affirming district court's finding that destruction of one's "professional capacity and ordinary livelihood constituted a pretty serious punishment already inflicted…and one that's likely to be permanent.") (internal citations omitted); *United States v. Anderson*, 533 F.3d 623, 633 (8th Cir. 2008) (finding that district court did not abuse its discretion in considering "atypical punishment" of loss of reputation and company); *United States v. Hendrick*, 2009 WL 10709763, at *3 (S.D. Fla. Sept. 23, 2009) (noting the loss of law license in connection with downward variance on resentencing).

### (b)    Notoriety of Case and Civil Lawsuits

The negative press coverage has been significant.  Mr. Peters has been at the center of much of that coverage.  He has been in no position to respond, particularly after he began cooperating with the government.  He has been exposed to two civil lawsuits, has had to pay to defend those civil lawsuits, and will not be voluntarily indemnified for any judgment.

### (c)    ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[17] A number of California-barred attorneys, who appear to have engaged in unethical and possibly criminal behavior, were not charged.  Unless charges are brought and convictions are obtained, none will face the certain loss of a law license by summary disbarment.

[18] Mr. Peters is painfully aware of the difficulties his wife and daughter have faced as a result of his conduct.  This is a source of intense personal distress and sadness.  He deeply regrets that his conduct has negatively impacting his daughter at this crucial stage of her ███████████████

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

16                                    Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM



**5.**      <u>**History of Good Works and Community Service**</u>

Mr. Peters has a long history of good works and service to his community, going back to college and law school. When in private practice, he received the Wiley W. Manual Certificate for Pro Bono Legal Services for his work with tenants in unlawful detainer matters as a volunteer lawyer for Bet Tzedek. He has volunteered at his daughter's school and volunteers with two Chabad community organizations. Since last year, he has volunteered weekly at MEND's foodbank in Pacoima, spending each Friday providing food and other assistance to those in need. *See* Mend Materials at Ex. G.

A community service component to a non-custodial sentence would allow Mr. Peters to continue to contribute his considerable talents to better his community. Mr. Peters' community service could include, for instance, a requirement that he offer to speak to law schools, law firms, and bar associations about his experience, for free, as a cautionary tale.

**6.**      <u>**Amenability to Supervision in the Community**</u>

On February 14, 2022, Mr. Peters appeared on a summons and was released on personal recognizance bond. He has been on pretrial release for a year and is in compliance. His amenability to non-custodial, community supervision is a factor

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

17      Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM

that supports the defense's request for probationary sentence.

### C.   Purposes of Sentencing

The purposes of sentencing, pursuant to § 3553(a)(2)(A)-(D), including just punishment and specific and general deterrence,[19] can be met with a probationary sentence with home confinement and community service, which the Court can do through a combination of an appropriate Guidelines calculation and downward departure, a downward departure for substantial assistance under §5K1.1, and a downward *Booker* variance.

### D.   Need to Avoid Unwanted Disparities

A court must, when determining a sentence, consider the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

Mr. Peters does not have co-defendants.

Person A was not charged in connection with her extortion and, apparently, will not be charged, as the statute of limitations appears to have run.  No other California-barred attorneys were charged criminally, despite their participation in and knowledge of the underlying collusive lawsuit and settlement and despite, at least as to some of them, lying to the government during the investigation.

Of those charged in the "related" cases, their conduct is plainly not comparable to that of Mr. Peters, and they cannot fairly be considered "similarly

---

[19] Mr. Peters presents no realistic risk of recidivism.  As for general deterrence, Mr. Peters has been placed on involuntary inactive status by the Bar and is the only California-barred attorney who will be summarily disbarred as a result of the underlying misconduct.  Mr. Peters has cooperated and taken responsibility, unlike many other wrongdoers in the underlying litigation, and his sentence should reflect that courts want to encourage cooperation with the government and acceptance of responsibility.  Finally, the extortion took place over six years ago and Mr. Peters' concealment efforts ended almost four years ago.  As set forth herein, Mr. Peters has since taken important steps since then to accept responsibility, cooperate, and regain stability in his life.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

situated." First, as to Mr. Paradis, he is responsible for much of the wrongdoing at issue in the underlying litigation and stood to gain millions in profit for his misconduct. Mr. Peters was completely unaware of and uninvolved in Mr. Paradis' kickback and bribery scheme. Second, as to Mr. Wright and Mr. Alexander, they accepted bribes, engaged in obstructionist behavior, including (in Mr. Wright's case) destruction of evidence, and lying to the government when interviewed. They also either did not cooperate or did not provide meaningful cooperation.

With respect to similarly situated defendants nationally, the defense has been unable to identify a sentencing in a case involving a defendant who aided and abetted the non-violent, economic, or reputational extortion of another person, did not receive or request any payment from that extortion, and did not coordinate, communicate, or collude with the extortionist.

**E.    Fine**

The USPO has recommended a high-end fine of $150,000. The defense requests that the Court impose a fine at the low end of the Guidelines range, given the financial impact this case has had and will continue to have on Mr. Peters, including expenditure of legal fees (much of which has been in connection with his cooperation), the loss of his ability to practice law.

**F.    Proposed Conditions of Supervised Release/Probation**

The USPO recommended a number of conditions of Supervised Release/Probation that the defense submits are onerous, inappropriate, and constitute a "greater deprivation of liberty than is reasonably necessary" to meet the purposes of sentencing. These include Conditions 4-7. Mr. Peters' use of alcohol was time- and situation-specific; it occurred in the wake of learning of the government's decision to charge him criminally, which was 18 month ago; and is not an ongoing issue, █████████████████████████████████████████ █████████████████████████████████████████████████████ ████████ and the unwavering support of family and friends.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  **V.**     <u>**CONCLUSION**</u>

2          Mr. Peters' misconduct, for which he has fully accepted responsibility, is

3  outweighed by his cooperation, otherwise law-abiding life, imminent loss of his

4  license to practice law, his personal history and characteristics, and the nature and

5  circumstances of his offense.  For these reasons, the defense respectfully requests

6  that the Court impose a sentence of probation with home confinement, community

7  service, and a low-end fine, which is "is sufficient, but not greater than necessary,"

8  to achieve the purposes of sentencing.

9

10  DATED:  April 25, 2023               KENDALL BRILL & KELLY LLP

11

12

13                                By:  _____/s/ Jeffrey H. Rutherford_____

14                                     Jeffrey H. Rutherford
                                       Attorneys for Thomas H. Peters

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

20                                           Case No. CR 22-09-SB
DEFENDANT THOMAS H. PETERS' SENTENCING MEMORANDUM