E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SUSAN S. HAR (Cal. Bar No. 301924)
J. JAMARI BUXTON (Cal. Bar No. 342364)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-3289
    Facsimile:   (213) 894-0141
    E-mail:      Susan.Har@usdoj.gov
                   Jamari.Buxton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-009-SB |
|---|---|
| Plaintiff, | **GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM AND OBJECTIONS TO THE PRESENTENCE REPORT** |
| v. | |
| THOMAS H. PETERS, | |
| Defendant. | Hearing Date: May 9, 2023<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon. Stanley Blumenfeld |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Susan S. Har and J. Jamari Buxton, hereby files its reply to defendant Thomas H. Peters' sentencing memorandum (Dkt. Nos. 41, 45) and objections to the Presentence Report (Dkt. No. 43).

This reply is based upon the attached memorandum of points and authorities, the government's sentencing position, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 2, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

  /s/
SUSAN S. HAR
J. JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.  OVERVIEW .................................................................................................................. 1

II. THE 14-LEVEL ENHANCEMENT FOR THE VALUE OF EXTORTION DOES NOT OVERSTATE THE SERIOUSNESS OF THE OFFENSE ............... 2

III. THE 2-LEVEL ABUSE OF POSITION OF TRUST ENHANCEMENT APPLIES ........................................................................................................................ 4

IV. A DEPARTURE OR VARIANCE FOR ABERRANT BEHAVIOR DOES NOT APPLY ................................................................................................................. 5

V.  THE GOVERNMENT HAS ALREADY CREDITED DEFENDANT'S ACCEPTANCE OF RESPONSIBILITY ................................................................. 5

VI. NO TWO-TIERED SYSTEM OF JUSTICE ........................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. OVERVIEW

The government disagrees with defendant's proposed calculation of the Guidelines, upon which defendant advocates for a probationary sentence for his "misconduct." (Dkt. No. 45 at 1-3, 20.)[1] In particular, defendant seeks (1) a downward departure or variance based on the purportedly "overstated" impact of the 14-level enhancement for the amount of the extortion; (2) the non-application of the 2-level enhancement for abuse of a position of trust; (3) a downward departure or variance for aberrant behavior; (4) a downward variance based on defendant's extraordinary acceptance of responsibility; and (5) other downward variances based on defendant's history and characteristics.

In addition to being legally incorrect, as detailed below, defendant's arguments suffer from a common flaw: they ignore defendant's own criminal conduct and shift blame onto others. Indeed, other than a generalized reference to defendant's crime of aiding and abetting extortion "to which [he] pled guilty" (Dkt. No. 45 at 2), noticeably absent from defendant's sentencing position is any specific acknowledgement of the crime defendant committed and, just as important, <u>why</u> he committed it.[2] To be clear: defendant committed the federal crime of extortion by directing Kiesel to pay Person A nearly one million dollars under the (very real) threat of Keisel's public firing and consequent substantial economic and reputational harm. And the <u>reason</u> defendant committed this crime was, at its core, <u>to save himself</u> from the certain economic and

---

[1] Docket No. 45 is the unredacted version of defendant's sentencing position filed under seal. A redacted version of defendant's sentencing position was publicly filed at Docket No. 41.

[2] The government interprets defendant's sentencing position as the legal arguments and advocacy of his counsel and not as the individual defendant's minimization or shirking of his acceptance of responsibility for his criminal conduct. Defendant's letter to the Court, which the government found to be sincere, reflects the fulsome acceptance of responsibility and remorse that the government has observed with this defendant, as described in the government's sentencing position.

reputational loss that defendant would suffer if the City's collusion, which defendant had spent years concealing, were to come to light. The Court should reject defendant's Guidelines calculation.

## II. THE 14-LEVEL ENHANCEMENT FOR THE VALUE OF EXTORTION DOES NOT OVERSTATE THE SERIOUSNESS OF THE OFFENSE

In the plea agreement, defendant stipulated that the 14-level enhancement under U.S.S.G. § 2B1.1(b)(H) (amount over $550,000) applied. (Dkt. No. 7 ¶ 16.) Defendant pled that he "understood that Person A had demanded over a million dollars from Kiesel." (Id., Attachment A [Factual Basis] ¶ 16.) With that understanding, defendant "directed Kiesel to resolve the situation—including, if necessary, by satisfying Person A's monetary demands and getting the documents back—or else defendant PETERS would advocate to have Kiesel fired as the City's Special Counsel." (Id. ¶ 18.) When the demand dropped to $900,000, defendant continued to tell Kiesel that he "needed to take care of the Person A problem . . . even if that required Kiesel to pay her monetary demand." (Id. ¶ 19.) Defendant's threats continued until Kiesel informed defendant he had paid $800,000, at which point defendant told him "Good job." (Id. ¶ 28.) Defendant committed this extortion not because (as he implies in his sentencing position) he thought Person A had some valuable employment cause of action. On the contrary, defendant deliberately and repeatedly threatened Kiesel chiefly to protect his own job and reputation, his future employment prospects, the reputation of the City Attorney's Office, and two high-stakes lawsuits for the City, including one that he directly oversaw. (Id. ¶¶ 11, 17-18, 20.)

Despite these facts, the defense now seeks a downward departure or variance based on the purportedly overstated impact of the extortion amount. The defense argues that defendant did not receive the money and "played no role in determining the amount obtained." (Dkt. No. 45 at 12.) The problem with this argument is that it focuses only on Person A and ignores defendant's crime and defendant's state of mind. His crime was to lean on Kiesel to "take care" of the problem or risk being fired from the Special

2

Counsel position—a threat defendant made understanding full well that Person A's extortionate demand was well over $550,000 (the threshold amount for the 14-level enhancement).[3] Defendant intended for Kiesel to wrongfully pay Person A's monetary demand of over $550,000, if that is what it would take to get the documents back.[4] (Factual Basis ¶ 29 ("PETERS induced Kiesel to part with property by wrongful threat of economic or reputational harm, <u>and he did so with the intent to obtain Kiesel's property for Person A</u> and to facilitate Person A's extortion.") (emphasis added).)

The § 2B1.1 enhancement is intended to reflect defendant's culpability, based on "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, Appl. Note 3. "Intended loss" refers to the pecuniary harm that defendant purposely sought to inflict and includes the intended harm <u>even if</u> "that would have been impossible or unlikely to occur." <u>Id.</u> The reason for using intended loss is that it is a "direct measure of culpable mental state" and reflects the defendant's culpability. <u>United States v. Hoffman</u>, 901 F.3d 523, 558 (5th Cir. 2018) (citations omitted) (explaining that "a focus on intended loss makes sense for moral and utilitarian considerations" (cleaned up)). Consistent with this principle, the 14-level enhancement here appropriately captures the culpability of defendant's <u>mens rea</u> and, in turn, the commensurate seriousness of his crime when a defendant like this one threatens and intends the loss of over $550,000 to the victim.

That is why the defense's speculation—that a lower enhancement would have applied if Person A ultimately obtained less than $95,000—misses the mark. (<u>See</u> Dkt. No. 45 at 12.) First of all, had defendant threatened Kiesel with termination intending for Kiesel to pay the extortionate demand of over $550,000 to get the documents back, the 14-level enhancement would still apply based on defendant's greater intended loss to

---

[3] Defendant understood Person A's demand to be extortion. (Factual Basis ¶¶ 20, 26.)

[4] As noted in its sentencing position, the government does not seek to apply this enhancement based on the economic loss that defendant effectively threatened through the loss of Kiesel's Special Counsel role. (Dkt. No. 46 at 9.)

3

Kiesel—regardless of Person A's ultimately payout. But in any event, had defendant hypothetically made the threats he did when the extortionate demand was only ever $95,000, that would theoretically decrease defendant's culpability and the seriousness of his crime, and a lower enhancement would be appropriate. But that is not what happened here. Rather, defendant evaluated Person A's demand and made the calculated decision to coerce Kiesel to pay it to stop Person A from revealing information that would damage the City and, in turn, threaten defendant's career and reputation. In so doing and in admitting these facts, defendant conceded that the value of the extortionate demand matched the seriousness of the offense.

Based on the actual facts and circumstances of defendant's (repeated) conduct of threats, his intended loss to Kiesel, and the actual payout to Person A, the full 14-level enhancement correctly and appropriately applies.

### III. THE 2-LEVEL ABUSE OF POSITION OF TRUST ENHANCEMENT APPLIES

As set forth in the government's sentencing position, the USPO correctly applied the two-level enhancement pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust because defendant abused his position as the Chief of the Civil Litigation Branch to significantly facilitate the commission of his crime of aiding and abetting Person A's extortion and inducing Kiesel to pay the demand. (See Dkt. No. 46 at 10.)

Defendant again misses the mark when he argues that this enhancement should not apply because Person A acted "completely independent" of defendant and that her extortion was "well underway" by the time defendant was informed of it. (Dkt. No. 45 at 13.) Again, the question is whether defendant abused his position of trust to significantly facilitate the commission of his crime. His crime was to make the specific extortionate threats against Kiesel, wielding his high-ranking position at the City Attorney's Office that he would advocate to have Kiesel fired as Special Counsel if Kiesel did not pay Person A's demand. And there is no question that, by defendant's threats in his capacity as the City's head of Civil Litigation, defendant "require[d] Kiesel

4

to satisfy Person A's monetary demands" and "induced Kiesel to part with property by wrongful threat of economic or reputational harm[.]" (Factual Basis ¶ 29.) That was an abuse of defendant's position of trust.

### IV. A DEPARTURE OR VARIANCE FOR ABERRANT BEHAVIOR DOES NOT APPLY

Next, defendant seeks a departure or variance under U.S.S.G. § 5K2.20 for aberrant behavior. (Dkt. No. 45 at 13-14.)

U.S.S.G. § 5K2.20 contains a policy statement that courts may depart downward only if the defendant committed a "single criminal occurrence or single criminal transaction that was committed without significant planning" and "was of limited duration." U.S.S.G. § 5K2.20(b). The commentary notes that "repetitious or significant, planned behavior" does not meet the requirements for a departure for aberrant behavior. U.S.S.G. § 5K2.20(b), comment (n.2).

Here, defendant's criminal conduct was neither a single occurrence without significant planning nor of limited duration. To the contrary, defendant was the persistent, threatening drumbeat of potential termination on November 17, November 29, and December 4, 2017 that ultimately induced Kiesel to pay the extortionate demand. (Factual Basis ¶¶ 18, 19, 24-28.) Defendant's threats were not made in the spur of the moment or as a one-off slip of the tongue; rather, they were made as a calculated decision through a series of discussions and meetings, including with senior members of the City Attorney's Office. And that was because long before Person A even made her monetary demand, defendant had already committed to the plan and strategy to actively conceal the City's collusion in Jones v. City—a plan he continued even after he had left the City. Such facts do not support a departure or variance for aberrant behavior.

### V. THE GOVERNMENT HAS ALREADY CREDITED DEFENDANT'S ACCEPTANCE OF RESPONSIBILITY

Defendant also seeks a downward variance based on his extraordinary acceptance of responsibility. (Dkt. No. 45 at 15.)

Although the government agrees that defendant has shown a fulsome acceptance of responsibility and is entitled to the 3-level departure under U.S.S.G. § 3E1.1, a further variance on that basis is not warranted. Indeed, the government has already credited defendant's fulsome acceptance of responsibility, without which he would not have been eligible for a cooperation plea agreement. Through that plea agreement, defendant had the opportunity to cooperate fully with both the federal government and any other prosecuting authorities as directed. (Dkt. No. 7 ¶¶ 3, 6.) And as set forth in its sentencing position, the government made those cooperation opportunities available to defendant and now seeks a 7-level departure and variance based on defendant's cooperation and acceptance of responsibility. No further variance is necessary to account for defendant's acceptance of responsibility.

## VI. NO TWO-TIERED SYSTEM OF JUSTICE

Finally, the defense seeks a downward variance based on defendant's history and characteristics. In support of its position, the defense supplied numerous letters of support detailing (among other things) defendant's many professional accomplishments, including from friends and former colleagues with impressive backgrounds of their own. Many of the letters speak to defendant's passion for the law and his legal career, which he will no longer be able to practice. One such letter characterizes the loss of defendant's law license as "the most severe blow he could suffer." (Dkt. No. 45, Ex. B at 52.) While there may be other reasons for mitigation, defendant's former status, connections, resources, and privileges should not be among them.

As <u>Musgrave</u>, <u>Treadwell</u>, <u>Stefonek</u>, <u>Prosperi, Bistline</u>, Chapter 5, Part H of the Guidelines, and the other authorities laid out in the government's sentencing position explain (Dkt. No. 46 at 15-16, 18-19), the law requires that the various § 3553(a) factors not be weighed to unjustly favor certain classes of defendants and disfavor others. Importantly, a defendant's privileged background, which defendant seemingly admits he had, and its attendant educational, employment, and socioeconomic advantages are simply not relevant to the determination of a sentence. (<u>See</u> <u>id.</u>) Along those same lines,

1 defendant's loss of his law license is, in many ways, a reflection of that privileged
2 background and a consequence of his own criminal and unethical actions—and not a
3 consequence of his sentence, which should "reflect the seriousness of the offense."
4 United States v. Bistline, 665 F.3d 758, 765 (6th Cir. 2012) (disapproving of district
5 court's "recitation of [defendant's] collateral consequences" which did nothing to show
6 that the sentence "reflects the seriousness of his offense"; "Were it otherwise, these sorts
7 of consequences—particularly ones related to a defendant's humiliation before his
8 community, neighbors, and friends—would tend to support shorter sentences in cases
9 with defendants from privileged backgrounds, who might have more to lose along these
10 lines.  And '[w]e do not believe criminals with privileged backgrounds are more entitled
11 to leniency than those who have nothing left to lose.'" (citation omitted)); cf. Koon v.
12 United States, 518 U.S. 81, 110 (1996) (concluding that the district court abused its
13 discretion by considering petitioners' career loss because "it is not unusual for a public
14 official who is convicted of using his governmental authority to violate a person's rights
15 to lose his or her job and to be barred from future work in that field").[5]

For these same reasons, the Court should consider the defense's offered letters in their proper context and refrain from giving them or their authors undue weight.  See United States v. Morgan, 635 F. App'x 423, 449-50 (10th Cir. 2015) (explaining that the trial court placed "undue emphasis on the numerous letters" in which many of the authors "believed [defendant] had been adequately punished by the collateral consequences of his prosecution and conviction"; noting the court's lack of surprise at the number of letters offered, given that "[o]ne does not become [a high-ranking public official] without the confidence of many supporters, some quite influential.  The letters must be viewed in that light." (citations omitted)).  It should also be considered that the

---

[5] United States v. Whitmore, 35 F. App'x 307 (9th Cir. 2002), an unpublished Ninth Circuit case that the defense cites, is distinguishable because the defendant had already suffered employment consequences as a result of the "slow development" of the six-year-long prosecution against him.  Id. at 322; (see also Dkt. No. 45 at 16)

7

same passion and ambition that defendant had for his legal career is what drove him to put that career and himself over the public trust and to make the decision to aid and abet an almost-million-dollar extortion.